NESBIT *et al.* v. BENDHEIM.

(*Common Pleas of New York City and County, General Term.* June 22, 1891.)

**1.** BUILDING CONTRACT—ACTION BY MATERIAL-MAN—EVIDENCE.

In an action on an order drawn in plaintiff's favor by a building contractor on defendant, who was advancing money for the building, and accepted by him, "payable when the tenth payment is payable under building loan agreement," plaintiff testified that defendant told him that such "tenth payment" was due, but refused to pay the order, on account of the contractor's objections to plaintiff's account for materials furnished, unless plaintiff would get another order. This the defendant denied, alleging the contractor's abandoment of his contract before earning the tenth payment. There was testimony that plaintiff had been told by defendant that the "tenth payment" would be due "when the doors and sashes were hung," and it was after this hanging that plaintiff demanded payment of the order. *Held*, that the evidence was sufficient to justify a finding by the jury that such "tenth payment" was due when plaintiff's order was presented for payment.

**2.** SAME—EVIDENCE.

In such case, plaintiff having testified that he had never made certain representations to defendant respecting the price of material furnished the contractor, testified to by defendant, it was proper to submit the question to the jury whether such representations were in fact made, though there was some contradiction in plaintiff's testimony with respect thereto.

**3.** SUBMISSION TO JURY—EVIDENCE.

Defendant denied that he had directed plaintiff to get a new order from the contractor, but, having admitted that he told plaintiff about the contractor's claim for over charges, and that the second order in question was brought to him the next day, and plaintiff having testified that defendant, on presentment of the second order, had promised him a check for it next day, the question of defendant's having promised to pay if plaintiff should produce a second order was properly submitted to the jury, and a finding by them in the affirmative justified by the evidence.

**4.** NEW PROMISE—CONSIDERATION.

In such case the procurement by plaintiff at defendant's request of a withdrawal by the contractor of his objections to plaintiff's account, was a sufficient consideration for defendant's new promise.

**5.** SAME—PLEADING.

It was immaterial that such new promise was not pleaded, the cause of action being upon the original contract; the new promise being merely additional thereto.

**6. SAME—COMPETENCY OF EVIDENCE.**

Plaintiff was properly allowed to testify with respect to defendant's claim that the contractor's work was unfinished, and that defendant did not point out to him any deficiency of work that he required to be done by the contractor before payment of the order.

**7. SAME—BEST EVIDENCE.**

It was proper, in such case, to exclude the testimony of a witness that the inspector of buildings had condemned one of the contractor's walls, the inspector's judgment condemning the wall being the best evidence of that fact.

Appeal from city court, general term.

Action by John A. Nesbit and William H. Nesbit against Henry M. Bendheim. From a judgment for the plaintiffs, defendant appeals.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Samuel W. Weiss,* for appellant. *Anderson & Man,* (*E. Ellery Anderson,* of counsel,) for respondents.

DALY, C. J. This action is brought upon the following order.

"*Mr. Henry Bendheim*—DEAR SIR: Please pay to the order of John Nesbit's Sons the sum of eight hundred dollars, and deduct the same from the 10th payment on my contract, (door and blind.)

"$800.00.           Yours, respectfully,         JAMES N. GAULT."

The order was accepted by the defendant as follows:

"Accepted, payable when the tenth payment is payable under building loan agreement.                  HENRY M. BENDHEIM."

The complaint avers that the tenth payment specified in the foregoing acceptance became due thereafter, whereupon the plaintiffs demanded payment of the draft, which defendant refused. The defenses are: (1) A denial that the said tenth payment had become due, or that payment of the order had been demanded of defendant and refused; (2) that the acceptance was obtained by the fraudulent representation made by plaintiffs to the defendant that there was then due and owing to them by Gault $800 for materials furnished for the buildings included in the said building loan agreement, in excess of payments and expenses received by them; (3) that Gault was not indebted to the plaintiffs in any sum; and (4) that the acceptance was without consideration. The building loan agreement in question was between the defendant and Gault, and provided that the defendant was to advance to Gault $31,000 for the erection of buildings on four lots in Seventy-Third street, which he had conveyed to Gault. The tenth payment ($4,000) was to be paid "when doors, blinds, and sashes are all hung and properly glazed, plumbing all finished, sinks and water-closets in, stoops and door-pieces up, and painting finished on all of said four buildings." The plaintiffs had furnished Gault with brick, lime, and cement for the houses in question, and this order was for a balance of $800 claimed by them to be due. The questions whether the work had been completed which would entitle Gault to the tenth payment, and whether there was fraud in procuring this acceptance, were submitted to the jury, together with a third question, which was presented by the proofs, namely, whether, after demand had been made upon the defendant for the payment of his acceptance, he had made a new promise, upon a new consideration, to pay the order in question. The questions of fact in the case were all properly submitted to the jury, and their verdict in the plaintiffs' favor can be sustained upon the evidence. Upon the issue as to whether the tenth payment had become due, one of the plaintiffs, William H. Nesbit, testified positively that the defendant told him that the payment was due, and only refused to pay the order because Gault had claimed that plaintiffs had overcharged him for materials; and that defendant promised to pay the order if plaintiffs would get another written order from Gault. Defendant denies this admission and promise, and gave proof to show that Gault had abandoned his contract before earning the tenth payment, leaving several hundred dollars' worth of work to be done on that account, although defend-

.ant had advanced to him the whole $31,000 required by the contract, and more. It would seem from the case that W. H. Nesbit testified that when he received the order in question, which was at the office of defendant's counsel, in the presence of the latter and defendant himself, it was made payable out of the tenth payment at the defendant's request; that Nesbit was not familiar with all the contents of the tenth payment, and wanted it out of one of the previous ones, and that they told him "it was when the doors and sashes were hung;" that he asked for a copy of the contract, so that he could see, but neither the defendant nor his counsel had one, so he had no way of seeing; and he testified that when he demanded payment of the acceptance the doors and sashes were on. This, however, was denied; but upon the whole evidence in the case on this point there was a question of fact for the jury. Upon the issue of fraud the defendant testified that when the order was presented to him for acceptance W. H. Nesbit stated positively that $800 was due for materials delivered on the job at market prices; and defendant produced evidence to show that this representation was false, in that the plaintiffs had overcharged Gault for the materials delivered by them. The plaintiff testified that he never made such representation to defendant, although he admitted that he had agreed to deliver the goods to Gault at the market price. A question of fact as to whether such representations were made was thus presented to the jury. There was some contradiction in Nesbit's own evidence on the question, but that did not authorize the court to take that question from the jury. On the question of the alleged new promise made by the defendant, as before stated, the plaintiff W. H. Nesbit testified that when he presented the defendant's acceptance for payment the latter refused to pay, because Gault claimed that he had been overcharged; told him that Gault had stopped payment of the order for that reason, but instructed him to get another written order from Gault, and he would pay it. The plaintiff immediately procured from Gault the following:

"NEW YORK, August 11th, 1887.

"*Mr. Henry M. Bendheim:* I hereby withdraw all my objections to your paying Messrs. John Nesbit's Sons the amount of their order for $800. The order is due, and you will please pay the same without further delay.

"JOHN N GAULT."

Nesbit further testified that this order was presented to Gault, who promised to give plaintiffs a check for it the next day. The check was demanded the next day, but defendant refused to give it, and thereupon this action was brought.

The defendant admitted that he told the plaintiff to see Gault about the overcharges, and that this order was brought to him the next day; but denies that he directed the plaintiff to get it, or promised to pay him if he did so. The question as to the promise was properly submitted to the jury, and, if they found that it was made, the plaintiffs would be entitled to recover; for, even if the original acceptance by defendant never became payable, by its terms, so that an action could be maintained upon it, yet the new agreement, in addition to the original contract, authorized a recovery. The procurement by plaintiffs, at defendant's request, of the withdrawal by Gault of his objections, was sufficient consideration for the new promise, if such withdrawal were obtained. We are not obliged to inquire whether compliance with this request and the procurement of this withdrawal were of any value to defendant. He had his own dealings with Gault, and is presumed to have had his own reasons for what he did. It is sufficient that he specified the conditions upon which he would make immediate payment upon his acceptance, (for materials which plaintiffs had furnished, and which had gone to erect the building in which he was interested,) and that plaintiffs complied with such condition. In the case of *Willetts* v. *Insurance Co.*, 45 N. Y. 45, which was an action on a policy of marine insurance upon certain barrels of cider, it was conceded that the loss was not covered by the policy, but, the company's

agent having directed the insured to go and find the cider, have it inspected, and sold at auction, and do the best they could with it, and then come back to the company, and the latter would pay them the deficiency, and the insured having done as requested, it was held that a recovery for the deficiency should be affirmed. The court say "that such a promise, after performance by the promisee, is valid and binding, and is supported by a consideration therefor. Doubtless it lacks mutuality at its inception. There is, then, no consideration, and the obligation of it is suspended; but, when the performance of the condition is made, there does then attach a consideration which relates back to the making of the promise, and it becomes obligatory. *Train* v. *Gold,* 5 Pick. 380. The promise could not be enforced before performance of the condition on which it is made, for until then there is no consideration; but as soon as the act has been performed by which a party has been injured, unless the promise is kept, the promise becomes binding. *Hilton* v. *Southwick,* 17 Me. 304. Though there be not mutual promises, however, if before he calls for the fulfillment of the promise the promisee do perform that in consideration of his doing which the promise is made, there is a consideration for the agreement, and it can be enforced. *L'Amoreux* v. *Gould,* 7 N. Y. 349. If these authorities are sound, the promise of the defendant was binding upon them. We see no reason to question them." The principle is again recognized in the case of *National Bank of Commerce* v. *Manufacturers' & Traders' Bank,* 122 N. Y. 367.[1] It is, however, objected by the appellant that the plaintiffs never did in fact obtain a withdrawal of Gault's objections, because it appears from the evidence that when Gault gave them the written withdrawal it was upon their promise to make reductions in their bills. But this fact in no wise affects the defendant's liability. What he required was a withdrawal of Gault's objections to his paying the order, and this the plaintiffs procured, thus establishing the consideration for the new promise. The private arrangement between Gault and the plaintiffs did not affect the defendant's rights in any respect. The chief objection relied upon by the defendant against the right of plaintiffs to recover upon this new promise is that it was not pleaded; that the cause of action set out in the complaint is upon the original acceptance and performance of the work upon which the tenth payment depended. This objection is not well taken. The cause of action is upon the original contract. The new promise is merely additional. This is expressly held in the case first cited, and it appears from the report of that case that the action was brought upon the original policy of insurance, the subsequent promise being proved under that pleading. The objection may be disposed of, however, upon another ground. No objection was made when evidence of the new promise and the performance of the consideration for it was given at the trial, and no objection was taken at the trial to the fact that such evidence was inadmissible under the pleadings. It is therefore too late to make the objection now.

The exceptions in the case have next to be considered. Upon the cross-examination of the plaintiff W. H. Nesbit certain questions were put to elicit evidence in support of the defenses set up in the answer. One of those ruled out was subsequently fully answered. Others, in relation to market values of the materials, were properly ruled out, because it was not then shown that plaintiffs had made any representations to the defendant that they had furnished the materials at market rates. The witness positively swore that he did not make those representations to the defendant. Subsequently, when the fact of the representations was testified to, the subject of prices charged and actual values was fully gone into. The allowance of the question, put to the same witness by his own counsel, as to whether defendant pointed out any deficiency of work that he required to be done before he would pay the order, was proper. It was intended to contradict defendant's testimony as to

[1] 25 N. E. Rep. 355.

deficiencies in the work by showing that at a time when, if ever, he would be most likely to complain of them, namely, when he was called upon to pay an order accepted upon condition that the work was completed, he was silent as to any such deficiencies. The allowance of the question to the same witness as to what passed between him and Gault in regard to correcting alleged overcharges, was proper to explain the testimony of Gault, drawn out by defendant on cross-examination, that he signed the withdrawal on the promise of the witness to make reductions in the plaintiffs' bill. There was no error in excluding evidence that the inspector of buildings condemned the walls. This was no proof of a failure to comply with the rules of the inspector of buildings, as required by the contract. It was an attempt to show without any record, and by hearsay, a judgment of the inspector; not any rule or regulation. The exceptions to the refusals to dismiss the complaint have been, in effect, disposed of in considering the appellant's objections as to want of proof that the tenth payment had become due, and also in discussing the effect of the new promise. The same may be said as to the exceptions to the charge of the court in leaving to the jury the question whether such payment became due, and in refusing to charge that there was no evidence thereof. The exception to the charge of the court with respect to the new promise of defendant shows no error. It was not error to charge the plaintiffs' request that the $800 in suit did not include a charge (of $279.75) for materials furnished to other houses. Plaintiffs' testimony explained that this amount had been paid out of a certain cash payment of $1,000, and there was no contradiction of this, unless the defendant's testimony in reference to an alleged admission of plaintiffs be so considered. This testimony was as follows: "When Mr. Nesbit said to me that $800 were due, he said something with reference to that $800 being in excess of $7,775, which amount was made up of $1,000 Mr. Nesbit had received in cash and $6,775 in orders. He said it was over and above that amount." This was too loose and uncertain to raise an issue as to the correctness of plaintiffs' positive statement that the $279.75 was not included in the balance due for these houses. The testimony as to this admission was given by the defendant to show under what inducement he accepted this order, but it is immaterial (under this exception) that he understood that $1,000 had already been paid for materials for these houses, if in fact he was not called upon to pay for materials he did not furnish them. The last exception to be considered is that taken to the court's charging the jury as follows: "If defendant, knowing all the facts, as part of the consideration for the conveyance to Bertha Davis, agreed himself to finish all the houses, and, after such agreement, promised unconditionally to pay the draft in suit, there must be a verdict for plaintiffs, regardless of the question whether the houses had been completed to the condition required by the tenth payment." It is objected that there was no evidence of any agreement by defendant to finish any of the houses. This is not a fair conclusion from the evidence. Gault swore that defendant agreed, in consideration of that conveyance, "to go in and help to finish the houses; to put in money to finish them;" also "he was to go in and help me finish the houses." As Gault swore that he had not the means to finish the houses himself, (and this was inferable from the condition of affairs as proved,) it might fairly be presumed that the assistance which defendant was to give in finishing the houses was bearing the expense of it, and this was equivalent to finishing them himself. It is, however, contended that such an agreement would not make the defendant liable upon his acceptance. But why not? If defendant agreed to take upon himself the finishing of the houses, there could be no default on Gault's part in reaching any of the subsequent payments under the contract, and so defendant would be liable upon his acceptance to the plaintiffs, because any default in completing the work would then be his own default, of which he could not avail himself. The judgment should be affirmed, with costs. All concur.